UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.:

JAMES WATSON,

     Plaintiff,

v.

EARL'S RESTAURANT (DADELAND), INC.
and EARL'S RESTAURANTS USA INC.,

     Defendants.

_____/

## COMPLAINT FOR INJUNCTIVE RELIEF

Plaintiff James Watson hereby sues Defendant Earl's Restaurant (Dadeland), Inc. and Defendant Earl's Restaurants USA Inc. for Injunctive Relief, attorney's fees, litigation expenses and costs pursuant to Title III of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12181-12189 ("ADA"), 28 C.F.R. Part 36, *et seq*.

1. Venue lies in the Southern District of Florida pursuant to 28 U.S.C. § 1391(b) and Local Rule 3.1, in that the original transaction or occurrence giving rise to this cause of action occurred in this District.

2. Pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, this Court has been given original jurisdiction over actions which arise from the Defendants' violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq*. *See* also 28 U.S.C. § 2201 and § 2202.

3. Plaintiff James Watson ("Plaintiff") is a Florida resident, lives in Miami-Dade County, is *sui juris*, and qualifies as an individual with disabilities as defined by the ADA. Plaintiff is legally blind and a member of a protected class under the ADA, 42 U.S.C. §§ 12102(1)-(2), the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq.* and in 42 U.S.C. 3602,

§802(h). Plaintiff is substantially limited in the major life activity of seeing. Plaintiff's disability is defined in 28 C.F.R. §36.105(b)(2).

4. Plaintiff uses the internet and a mobile device to help him navigate a world of goods, products and services like the sighted. The internet, websites and mobile applications provide him a window into the world that he would not otherwise have. He brings this action against Defendants for offering and maintaining a mobile website (software that is intended to run on mobile devises such as phones or tablet computers) that is not fully accessible and independently usable by visually impaired consumers. Plaintiff utilizes the Apple Screen Reader VoiceOver software to read computer materials and/or access and comprehend internet mobile website information which is specifically designed for the visually impaired.

5. Plaintiff is also an advocate of the rights of similarly situated disabled persons and is a "tester" for the purpose of asserting his civil rights and monitoring, ensuring, and determining whether places of public accommodation and/or their mobile websites are in compliance with the ADA.

6. The Earls restaurant chain is a privately held restaurant chain which originated in Canada. The Earls brand was founded in 1982 as a burger restaurant but the restaurant has evolved into an upscale establishment and menu expanded to offer world cuisine using meat sourced from farms certified as "humane," cage-free chickens and sustainable seafood. There are 68 Earls restaurants throughout Canada and the United States. There are two Earls brand restaurant located in Florida, one is located in Orlando and the second is within Miami Dade county. All Earls (brand) restaurants are open to the public; therefore, each is a Place of Public Accommodation subject to the requirements of Title III of the ADA and its implementing regulation as defined by 42 U.S.C. §12181(7)(B), §12182, and 28 C.F.R. §36.104(2). These Earls restaurants are also referenced

herein as "place(s) of public accommodation," "Earls restaurant(s)," or "restaurant(s).

7. Defendant Earl's Restaurant (Dadeland), Inc. (also referenced as "Defendant Dadeland" or collectively with Defendant Earl's Restaurants USA Inc. as "Defendants") is a Florida for profit corporation which is the owner and operator of the Earls restaurant which is located in the Dadeland regional shopping complex with the specific address being 7535 North Kendall Drive, Miami, Florida 33156. Defendant Dadeland is defined as a "Public Accommodation" within meaning of Title III because Defendant Dadeland is a private entity which owns and/or operates "[A] restaurant, bar, or other establishment serving food or drink," 42 U.S.C. §12181(7)(B) and 28 C.F.R. §36.104(2). Defendant Dadeland's Earls restaurant is referenced herein as "Earls Dadeland restaurant" or "place of public accommodation."

8. Defendant Earl's Restaurants USA Inc. (also referenced as "Defendant Earls USA" or collectively with Defendant Dadeland as "Defendants") is a foreign for profit corporation authorized to transact business in Florida. On information and belief, Defendant Earls USA is the United States subsidiary of Earl's Restaurants Ltd, the Canadian parent company for the Earls restaurant brand.

9. On information and belief, subsequent to the effective date of the ADA, Defendant Earls USA constructed, or caused to be constructed, the https://earls.ca mobile website (hereinafter "mobile website") for the general public to access on their mobile devices (phones, tablets). This mobile website supports, is an extension of, is in conjunction with, is complementary and supplemental to Earls restaurants. The mobile website delineates the goods, services, accommodations, privileges, benefits and facilities available to patrons at each of the Earls brand restaurants, which are located throughout the United States and with specificity, at the Dadeland regional shopping complex which is owned/operated by Defendant Earls Dadeland.

3

10. The Earls restaurants which are showcased on the https://earls.ca mobile website are open to the public, therefore they are all Places of Public Accommodation subject to the requirements of Title III of the ADA and its implementing regulation as defined by 42 U.S.C. §12181(7) (B), §12182, and 28 C.F.R. §36.104(2). The Earls restaurants are referenced throughout as "place(s) of public accommodation," "Earls restaurants," or "restaurant(s)."

11. The mobile website is offered by Defendant Earls USA as a way for the public to become familiar with the Earls restaurant menu selections, as well as information on hours of operation, the Earls Dadeland restaurant location, and provides links to reserve a table for dining within the restaurant, sign up for the Earls restaurant newsletter, and to order food for pick-up or delivery, and provides other information the Defendants seek to communicate to the public. The mobile website also offers the public the ability to purchase gift cards online for exclusive use at Earls restaurants and the ability to check on the gift card balance. The mobile website also links to Earls Twitter, Facebook, Instagram and Spotify accounts/pages. By the provision of menu selection, reservation services, to-go/delivery food order selection, and the ability to purchase gift cards online, the mobile website is an integral part of the goods and services offered by Defendants. By this nexus, the mobile website is characterized as a Place of Public Accommodation to Title III of the ADA[1], 42 U.S.C. §§ 12181(7)(B) & (E). and 28 C.F.R. §§ 36.104(2) & (5).

12. As the owner of the mobile website which is a Place of Public Accommodation, Defendant Earls USA is defined as a "Public Accommodation" within meaning of Title III under

---

[1] Ensuring Web Accessibility for people with disabilities has become a priority for the Department of Justice. The Department of Justice Civil Rights Division has taken the position that both State and local government websites (Title II) and the websites of private entities that are public accommodations (Title III) are covered by the ADA. On March 18, 2022, the DOJ issued guidance on Web Accessibility, see https://beta.ada.gov/resources/web-guidance/. The guidance states that individuals with disabilities should not be denied equal access to information, and inaccessible websites are as excluding as are access barriers to physical locations. DOJ guidance requires that website barriers must be identified, prevented, and removed so that all Title II and Title III entities offer websites that are accessible to people with disabilities.

4

42 U.S.C. §§ 12181(7)(B) & (E) and 28 C.F.R. §§ 36.104(2) & (5).

13. The https://earls.ca mobile website allows mobile device users to use a mobile platform through a connection to Wi-Fi or cellular data so that users can manage their dining choice from their mobile device. Defendants have subjected themselves to the ADA because the mobile website is offered as a tool to promote, advertise and sell products and services from each of the Earls restaurant locations and specifically with the Earls Dadeland restaurant location. As a result, the mobile website must interact with Earls restaurants and the public, and in doing so must comply with the ADA, which means it must not discriminate against individuals with disabilities and may not deny full and equal enjoyment of the goods and services afforded to the general public.[2]

14. The mobile website does not properly interact with VoiceOver screen reader software technology in a manner that allows blind and visually impaired individuals to comprehend the mobile website and does not provide other means to accommodate blind and visually impaired individuals.

15. Like the seeing community, Plaintiff would like the opportunity to be able to use the mobile website to comprehend Earls restaurant menu selections and to test for the ability to make reservations, order food for delivery or pick-up, and to purchase Earls gift cards online. However, unless Defendants are required to eliminate the access barriers at issue and required to change their policies so that access barriers do not reoccur, Plaintiff will continue to be denied full and equal access to the mobile website and will be deterred from fully using that mobile website.

16. Plaintiff is continuously aware of the violations on the mobile website and is aware that it would be a futile gesture to attempt to utilize the mobile website as long as those violations

---

[2] According to Statista, almost half of web traffic in the United States originated form mobile devices in 2021. Therefore, Defendant knew or should have known that potential customers would be using the mobile version of its website and provided accessibility for blind users.

exist unless he is willing to suffer additional discrimination.

17. Defendants and alike restaurants are fully aware of the need to provide full access to all visitors to its mobile website as such barriers result in discriminatory and unequal treatment of individuals with disabilities who are visually impaired and result in punishment and isolation of blind and low vision individuals from the rest of society.

18. Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged herein and this action is his only means to secure adequate redress from Defendants' discriminatory practice.

19. Notice to Defendants is not required as a result of Defendants' failure to cure the violations. Enforcement of the rights of Plaintiff is right and just pursuant to 28 U.S.C. §§ 2201, 2202.

20. Plaintiff has been obligated to retain the civil rights law office of J. Courtney Cunningham, PLLC and has agreed to pay a reasonable fee for services in the prosecution of this cause, including costs and expenses incurred. Plaintiff is entitled to recover those attorney's fees, costs and expenses from Defendants pursuant to 42 U.S.C. §12205 and 28 CFR 36.505.

## COUNT I – VIOLATIONS OF TITLE III OF THE ADA

21. The ADA requires that Public Accommodations (and Places of Public Accommodation) ensure that communication is effective, which includes the provision of auxiliary aids and services for such purpose.

22. According to 28 C.F.R. Section 36.303(b)(1), auxiliary aids and services includes "voice, text, and video-based telecommunications products and systems." 28 C.F.R. Section 36.303(b)(2) specifically states that (VoiceOver) screen reader software is an effective method of making visually delivered material available to individuals who are blind or have low vision.

23. 28 C.F.R. Section 36.303(c)(1)(ii) specifically states that public accommodations must furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities. "In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability."

24. Part 36 of Title 28 of the C.F.R. was designed and is implemented to effectuate subtitle A of Title III of the ADA, which prohibits discrimination on the basis of disability by public accommodations and requires places of public accommodation to be designed, constructed, and altered in compliance with the accessibility standards established by Part 36.

25. The [https://earls.ca](https://earls.ca) mobile website has been designed to integrate with Earls restaurants through the provision of a reservation service, provision of a store from which to purchase Earls gift cards online, and the ability to order food online for delivery to one's home or for pick-up at the restaurant; therefore, the mobile website is an extension of each Earls restaurant (and specifically the Earls Dadeland restaurant). By and through the mobile website, Defendants extend Earls restaurants into individual persons' homes and portable devices wherever located. The mobile website is a service, facility, privilege, advantage, benefit and accommodation of Earls restaurants. As such, the mobile website is integrated with, and is a nexus to, each Earls brick-and-mortar restaurant location, and specifically the Earls Dadeland restaurant location. Therefore, it is governed by the following provisions:

    a. U.S.C. Section 12182(a) provides: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."

  b. 42 U.S.C. Section 12182(b)(1)(A)(i) provides: "It shall be discriminatory to subject an individual or class of individuals on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements, to a denial of the opportunity of the individual or class to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity[.]"

  c. 42 U.S.C. Section 12182(b)(1)(A)(ii) provides: "It shall be discriminatory to afford an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals[.]"

  d. 42 U.S.C. Section 12182(b)(1)(A)(ii) provides: "It shall be discriminatory to provide an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements with a good, service, facility, privilege, advantage, or accommodation that is different or separate from that provided to other individuals, unless such action is necessary to provide the individual or class of individuals with a good, service, facility, privilege, advantage, or accommodation, or other opportunity that is as effective as that provided to others[.]"

  e. 42 U.S.C. Section 12182(b)(1)(B) provides: "Goods, services, facilities, privileges, advantages, and accommodations shall be afforded to an individual with a disability in the most integrated setting appropriate to the needs of the individual."

  f. 42 U.S.C. Section 12182(b)(1)(C) provides: "Notwithstanding the existence of separate or different programs or activities provided in accordance with this section, an individual with a disability shall not be denied the opportunity to participate in such programs or

8

activities that are not separate or different."

        g.    42 U.S.C. Section 12182(b)(2)(ii) describes as discrimination: "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations[.]"

        h.    42 U.S.C. Section 12182(b)(2)(iii) describes as discrimination: "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden[.]"

26.    Plaintiff attempted to access and/or utilize the https://earls.ca mobile website, but was unable to, and he continues to be unable to enjoy full and equal access to the mobile website and/or understand the content therein because numerous portions of the mobile website do not interface with VoiceOver screen reader software. Specifically, features of the mobile website that are inaccessible to VoiceOver screen reader software users include, but are not limited to, the following (citing the WCAG 2.1 Level A and AA Guidelines):

    i.    Guideline 1.3.1 Info and Relationships is violated. The *Allergen* table is not accessible; none of the table cells are announced with a reference to the specific header or row, therefore there is no way for a mobile VoiceOver screen reader software user to tell what allergens are related to each individual food product (cell). In addition, the *Allergen* table focus moves from the top of a column to the bottom of the column instead of from left to right as is the convention. For example, all of the food products are announced first and then focus moves to the next column of "egg" and all of the values for this column are

announced.

ii. Guideline 1.3.2 Meaningful Sequence is violated. Content must be presented in a meaningful order, and this is violated. The *Nutrition Guide* table has the same issue as the *Allergen* table. Focus moves from the top of a column to the bottom of the column instead of from left to right as is the convention. For example, "Dynamite Roll" is announced without reference to the specific header or cell and focus moves from top to bottom instead of left to right.

iii. Guideline 2.4.3 Focus order is violated. The site is required to provide focus in a logical order, and this has been violated. After opening the *Menu* link, a popup is displayed which reads "find your menu" and includes multiple buttons. This popup is not announced and focus does not move to the Menu when it is displayed. Even when a mobile VoiceOver screen reader software user swipes multiple times after the Menu is displayed, focus does not move to any of the elements in the popup. When a mobile VoiceOver screen reader software user swipes at the Menu, content such as "careers link" is announced, although this content is not displayed in the popup.

iv. Guideline 3.3.3 Error suggestion is violated. Elements must be labeled and given instructions, and the mobile website fails to do so. Error suggestions are not specific. For example, after submitting the *newsletter* form, "fill out this field" is announced. While an arrow points to the *Email* field, neither the field label nor the arrow is announced. When a mobile VoiceOver screen reader software swipes again, focus moves to a hidden field and "Hidden Gem: Steak plus sushi heading level 2" is announced, which is not shown in the popup.

v. Guideline 4.1.2 Name, Role, Value is violated. All elements must be built for accessibility and this is not the case. For mobile VoiceOver screen reader software users, none of the content regarding gift cards is announced, thus mobile VoiceOver screen reader software users are unable to order a gift card. When a mobile VoiceOver screen reader software user swipes through the *Gift Card* page, focus disappears and "location icon your store find a location menu caret button" is announced. Once this statement is announced, mobile VoiceOver screen reader software users are no longer able to swipe forward. While a widget is present and active, it disappears from view when mobile VoiceOver screen reader software users navigate the page.

27. As the owner, operator, and/or beneficiary of the mobile website which exclusively serves as a gateway to Earls restaurants and specifically as related to the Earls Dadeland restaurant location, Defendants are required to comply with the ADA and the provisions cited above. This includes Defendants' obligation to create and maintain a mobile website that is accessible to and usable by visually impaired persons so that they can enjoy full and equal access to the mobile

website and the content therein, including the ability to make a reservation to dine within Earls restaurant locations and/or to order Earls prepared food for pick-up or delivery to one's home (specifically as related to the Earls Dadeland restaurant location) and to purchase Earls gift cards online.

28. In this instant case, the mobile website reservation system is linked to a third party vendor. The fact that a portion of the WCAG 2.1 Level A and AA Guideline violations may be related to the third party vendor's reservation platform does not absolve Defendant of culpability. Because restaurants are places of public accommodation, their operators are subject to the requirements of Title III as well. 42 U.S.C. § 12181(7)(b). Those requirements include a prohibition against subjecting patrons with disabilities to discrimination "through contractual, licensing, or other arrangements," such as use of third party vendors' inaccessible platforms for making reservations. 42 U.S.C. § 12182(b)(1)(A); *See Kohler v Bed Bath & Beyond of Cal., LLC*, 780 F.3d 1260, 1264-66 (9th Cir. 2015) (Pre-existing obligations under Title III of the ADA may not be avoided through contractual arrangements, and those obligations remain even where compliance is under control of another party); *Robles v. Yum! Brands, Inc.*, 2018 WL 566781, *4 (C.D. Cal. January 24, 2018) (restaurant operators are liable for website and mobile app accessibility where there is a nexus to the restaurants themselves).

29. With respect to their mobile website, Defendants have violated the ADA by failing to interface their mobile website with VoiceOver screen reader software utilized by visually impaired individuals (as specifically delineated within paragraph 26) either directly or through contractual, licensing or other arrangements. Defendants' violations have resulted in Defendants' joint and several denial of accommodation to Plaintiff in the basis of his disability:

    a. by depriving Plaintiff of the full and equal enjoyment of the goods, services,

facilities, privileges, advantages, or accommodations of its place of public accommodation (42 U.S.C. § 12182(a));

  b. in the denial of providing Plaintiff the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations (42 U.S.C. § 12182(b)(1)(A)(i));

  c. in failing to afford Plaintiff the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that afforded to other individuals (42 U.S.C. § 12182(b)(1)(A)(ii));

  d. by providing Plaintiff a good, service, facility, privilege, advantage, or accommodation that is different or separate from that provided to other individuals (unless such action is necessary to provide the individual or class of individuals with a good, service, facility, privilege, advantage, or accommodation, or other opportunity that is as effective as that provided to others) (42 U.S.C. § 12182(b)(1)(A)(iii));

  e. by failing to afford Plaintiff goods, services, facilities, privileges, advantages, and accommodations in the most integrated setting appropriate to the needs of the disabled individual (42 U.S.C. § 12182(b)(1)(B));

  f. notwithstanding the existence of separate or different programs or activities provided in accordance with this section, by denying Plaintiff the opportunity to participate in such programs or activities that are not separate or different. (42 U.S.C. § 12182(b)(1)(C));

  g. by a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities (unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods,

services, facilities, privileges, advantages, or accommodations) (42 U.S.C. § 12182(b)(2)(ii)); and,

      h.    by a failure to take such steps as necessary to ensure that disabled individuals are not excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services (unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden) (42 U.S.C. § 12182(b)(2)(iii)).

    30.    Plaintiff is continuously aware of the violations within the https://earls.ca mobile website and is aware that it would be a futile gesture to attempt to utilize and/or test the mobile website as long as those violations exist unless he is willing to suffer additional discrimination.

    31.    Plaintiff is well aware that the ADA requires effective communications. However, long after the required date of compliance, many public accommodations refuse to comply leaving Plaintiff feeling excluded and rejected because he is disabled. As a result, Plaintiff has suffered (and continues to suffer) frustration and humiliation as the result of the discriminatory conditions present within the https://earls.ca mobile website. By continuing to operate and benefit from the mobile website with discriminatory conditions, Defendants contribute to Plaintiff's sense of isolation and segregation and deprive Plaintiff the full and equal enjoyment of the goods, services, facilities, privileges and/or accommodations available to the general public. By encountering the discriminatory conditions within the mobile website and knowing that it would be a futile gesture to attempt to utilize the mobile website unless he is willing to endure additional discrimination, Plaintiff is deprived of the meaningful choice of utilizing the same accommodations readily available to the general public and is deterred and discouraged from doing so. By maintaining a mobile website with violations, Defendants deprive Plaintiff the equality of opportunity offered to

the general public.

32. Plaintiff has suffered (and will continue to suffer) direct and indirect injury as a result of Defendants' discrimination until Defendants are compelled to comply with the requirements of the ADA and conform its mobile website to WCAG 2.1 Level A and AA Guidelines.

33. Plaintiff has a realistic, credible, existing and continuing threat of discrimination from Defendants' non-compliance with the ADA with respect to the mobile website. Plaintiff has reasonable grounds to believe that he will continue to be subjected to discrimination in violation of the ADA by Defendants when he visits the mobile website to test for compliance with the ADA. Plaintiff desires to access the mobile website to assure himself that the mobile website is in compliance with the ADA so that he and others similarly situated will have full and equal enjoyment of the mobile website without fear of discrimination.

34. Plaintiff is without adequate remedy at law and has suffered (and will continue to suffer) irreparable harm. Plaintiff and all others similarly situated will continue to suffer such discrimination, injury and damage without the immediate relief as requested herein.

35. Pursuant to 42 U.S.C. § 12188, this Court is provided with authority to grant Plaintiff Injunctive Relief, including an order to require Defendants to alter the https://earls.ca mobile website to make it readily accessible to and usable by Plaintiff and other persons with vision impairments.

**WHEREFORE,** Plaintiff James Watson hereby demands judgment against Defendant Earl's Restaurant (Dadeland), Inc. and Defendant Earl's Restaurants USA Inc. and requests the following injunctive and declaratory relief:

a. The Court issue a Declaratory Judgment that determines that the https://earls.ca

      mobile website is in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.;

b.   The Court issue a Declaratory Judgment that Defendants have violated the ADA by failing to monitor and maintain the mobile website to ensure that it is readily accessible to and usable by persons with vision impairment;

c.   The Court issue an Order directing Defendants to alter the mobile website to make it accessible to, and useable by, individuals with disabilities to the full extent required by Title III of the ADA;

d.   The Court issue an Order directing Defendants provide the appropriate auxiliary aids such that individuals with visual impairments will be able to effectively communicate with the https://earls.ca mobile website to comprehend the Earls Dadeland menu selections, for ordering/paying for gift cards online, and making reservations and ordering prepared food for pick up at the Earls Dadeland restaurant location (or for delivery of that food to one's home), and during that time period prior to the mobile website's being designed to permit individuals with visual impairments to effectively communicate, requiring Defendants to provide an alternative method for individuals with visual impairments to effectively communicate so that disabled individuals are not impeded from obtaining the goods and services made available to the public through the mobile website.

e.   The Court enter an Order directing Defendants to evaluate and neutralize their policies and procedures towards persons with disabilities for such reasonable time so as to allow Defendants to undertake and complete corrective procedures;

f.   The Court enter an Order directing Defendants to continually update and maintain

      their mobile website to ensure that it remains fully accessible to and usable by visually impaired individuals;

g.    The Court award attorney's fees, costs and litigation expenses pursuant to 42 U.S.C. § 12205; and,

h.    The Court provide such other relief as the Court deems just and proper, and/or is allowable under Title III of the Americans with Disabilities Act.

Dated: July 5, 2022

Respectfully submitted,

*/s/ J. Courtney Cunningham*
J. Courtney Cunningham, Esq.
J. COURTNEY CUNNINGHAM, PLLC
FBN: 628166
8950 SW 74th Court, Suite 2201
Miami, Florida 33156
T:  305-351-2014
cc@cunninghampllc.com